IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID BARRY VONEIME, ) | |
| ) | |
| Petitioner, ) | Case No. 7:20-cv-00746 |
| ) | |
| v. ) | |
| ) | |
| ISRAEL HAMILTON, WARDEN,[1] ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Respondent. ) | |

David Barry VonEime, a Virginia inmate proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging the criminal judgement entered against him by the Danville Circuit Court on September 4, 2009. VonEime has raised five claims in his petition, including ineffective assistance of counsel. The respondent has filed a motion to dismiss, alleging that the petition is untimely and that the issues are procedurally defaulted. Having reviewed the record, the court will grant the motion and dismiss the petition as time barred.

I.  BACKGROUND

On May 7, 2008, just after 9:30 in the evening, Donald Foutz went to the home of VonEime, someone he had known his entire life. According to Foutz, VonEime had left a note at Foutz's home that morning, asking to see Foutz, and VonEime had dropped by the house in the afternoon, looking for Foutz and asking Mrs. Foutz to have her husband come see him. When Foutz arrived at VonEime's trailer and knocked on the door, no one answered, but Foutz

---

[1] Under Rule 2(a) of the Rules Governing Section 2254 Cases, if the petitioner is in custody pursuant to a state court judgment, the respondent in a habeas petition shall be the state officer who has custody in his official capacity. When the petition was filed, Rodney W. Younce was the Warden of the facility where petitioner was incarcerated. The Warden is now Israel Hamilton. Respondent has requested, pursuant to Fed. R. Civ. P. 25(d), that Hamilton be substituted as the respondent because Hamilton is the successor official. Accordingly, the named respondent herein is changed to Israel Hamilton, Warden, and the Clerk shall update the docket accordingly.

could see VonEime at the kitchen table when he walked around the side of the house; he could also hear music coming from inside. He banged on the door again, calling VonEime's name, and after two more minutes, VonEime opened the door and let him in. Foutz said that VonEime seemed to be in a daze and his face was very red. VonEime sat back down at the table, and Foutz noticed several beer cans all around. Tr. at 10 – 15. VonEime said, "I haven't had nothing to eat in two days." *Id.* at 15. VonEime kept repeating himself and was swaying in his chair, and he looked up at Foutz and said, "You're not my friend." Tr. at 16.

Thinking perhaps that VonEime did not recognize him, he said, "It's me, Donald." *Id.* VonEime leaned back in his chair and reached for something in the clutter on the table, which turned out to be a gun. Foutz was shocked, and he immediately tried to disarm VonEime. As they struggled over the gun, Foutz saw VonEime's finger pulling on the trigger, but that gun never fired. While they struggled, VonEime fell to the floor and reached around his back, pulling a semi-automatic pistol out of his waistband. Foutz grabbed for the barrel of that gun just as it fired, a bullet going through Foutz's leg. Foutz continued to try to disarm VonEime, and a second bullet went through Foutz's right forearm. Foutz began kicking VonEime, who was still on the floor, to try to get the guns away, and he finally got control over the guns. He kicked VonEime two or three more times to make sure he stayed down long enough for Foutz to get out of the house, and he fled out the front door, guns still in his hands, and dropped the guns in the front yard. *Id.* at 16 – 22. VonEime then drove home, and his wife drove him to the hospital and called the police.[2]

---

[2] VonEime's description of events (Tr. at 57 – 61) differs substantially from Foutz's testimony, but the trial court accepted Foutz's version of events. The trial court's determination of facts is binding on this court unless overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

At Danville Regional Medical Center, Foutz was treated for a "flesh wound" in the leg, and x-rays were taken of his arm. He was told he would need surgery, but they would not operate that night. The hospital released him at two o'clock in the morning, and he went home, his arm still bleeding. The next day, his wife took him to Morehead Hospital in Eden, North Carolina, where he was admitted for surgery that same day. Tr. at 22 – 23. Foutz had shattered bones in his forearm, near the wrist, where the bullet entered, and near the elbow, where a 2-inch portion of bone had blown out. He remained in the hospital for twelve days, receiving a 9-inch plate in his arm to hold his radius together. He began physical therapy several times per week and remained in therapy as of September 2009. He suffered nerve damage in his arm, causing him to lose sensation in a large part of his arm and also causing severe phantom pain. Foutz remained completely out of work for eight months and then returned in a light-duty capacity, because he lacked the fine motor skills to work with the machine screws required in his job. He also had to learn to work with his left hand. His medical expenses for the injuries exceeded thirty-five-thousand dollars. *Id.* at 82 – 88.

After Mrs. Foutz called police, Corporal High was dispatched to VonEime's home in Danville to investigate. He found VonEime passed out in the front yard. Two firearms were also in the front yard. Corporal High maintained the scene until other officers arrived and a search warrant was obtained. *Id.* at 32 – 33. Officer Gillespie, the crime scene technician, recovered the firearms from the front yard, took photos of the crime scene, and searched the remainder of VonEime's trailer, finding two more firearms in one of the bedrooms. *Id.* at 39 – 44. VonEime was arrested at 2:40 a.m. on May 8, 2008, for malicious wounding. CCR[3] at 21.

---

[3] Citations to the Danville Circuit Court Record will be identified as "CCR at ___," using the handwritten page numbers in the bottom middle of each page.

## II.  PROCEDURAL HISTORY

The General District Court in Danville appointed counsel for VonEime.  On counsel's motion, on June 19, 2008, the court ordered a psychological evaluation of competency to stand trial and sanity at time of the offense.  Dr. Dana Blackmer, Licensed Clinical Psychologist, performed the evaluation at the Danville jail.  By report dated July 14, 2008, Dr. Blackmer opined that VonEime's intellectual limitations limited "his capacity to understand courtroom procedures and assist in his defense without additional education."  Dr. Blackmer Psych. Eval. Rpt. at 2, Br. Supp. Gov. Mot. to Dismiss, Ex. 9, Dkt. No. 14-9.  Dr. Blackmer recommended that VonEime be committed to an inpatient facility for restoration of competency.[4]  On July 18, 2008, the General District Court entered an order for treatment of an incompetent defendant.  Pursuant to that order, VonEime entered Central State Hospital on April 3, 2009, where he received individual competency coaching sessions from the psychologists on his treatment team.  VonEime remained at Central State Hospital for three weeks, during which time he was observed by medical staff and then re-evaluated for competency to stand trial.  Ted Simpson, Licensed Clinical Psychologist, reported on April 24, 2009, that VonEime then met the criteria for competency to stand trial; Dr. Simpson also recommended that defense counsel read important documents to VonEime and spend additional time in consultation to make sure that VonEime understood developments during the pretrial and trial proceedings.  Dr. Simpson Psych. Eval Rpt. at 5, Br. Supp. Gov. Mot. to Dismiss, Ex. 10, Dkt. No. 14-10.

---

[4] Presumably, Dr. Blackmer did not find VonEime legally insane at the time of the offense.  That report was provided only to defense counsel and not to the court or the prosecuting attorney.  No insanity defense was claimed at trial.  Further, Dr. Blackmer reported in the competency evaluation that VonEime had some problems with memory and some "vague paranoid thoughts," but that VonEime's thinking process was logical and linear and he did not show significant signs of a thought disorder.  Although a psychotic disorder could not be completely ruled out, Dr. Blackmer opined that VonEime's symptoms were most consistent with a substance-induced dementia.  Dr. Blackmer Psych. Eval. Rpt. at 2–3.

Once VonEime had been restored to competency, the Commonwealth proceeded to the Grand Jury on June 29, 2009, obtaining indictments against VonEime for *aggravated* malicious wounding of Donald Foutz, use of a firearm in the commission of a felony, and four counts of possession of a firearm by a convicted felon.  CCR at 63–66.  VonEime elected to be tried by the court without a jury on July 22, 2009.  After hearing the Commonwealth's evidence and the defendant's testimony, the trial court dismissed two of the charges for possession of a firearm by a convicted felon and convicted VonEime of aggravated malicious wounding, use of a firearm in commission of a felony, and the remaining two counts of possession of a firearm by a convicted felon.  Tr. at 76.  A presentence report was ordered, along with sentencing guideline worksheets for the voluntary Virginia Sentencing Guidelines.

On September 1, 2009, the court heard testimony from Mr. Foutz about his medical expenses and how the injury had affected his life.  The court also heard from the probation officer who prepared the presentence report and guidelines.  The primary offense of conviction listed on the guideline sheet was aggravated malicious wounding, as charged in the indictment, and the guideline range was 9 years, 11 months to 22 years, 1 month, with a midpoint of 18 years, 5 months.  Am. Pet. at 15, Dkt. No. 3.  The court chose to sentence VonEime above the guidelines, imposing the mandatory sentences for the three firearm convictions, totaling thirteen years, and life for the aggravated malicious wounding.  The final order was entered September 4, 2009.  CCR at 85–89.

VonEime appealed to the Court of Appeals of Virginia, challenging the sufficiency of the evidence against him.  The court denied his appeal in a per curiam opinion issued April 26, 2010.  A three-judge panel of the court affirmed the denial on July 7, 2010.  VonEime further appealed to the Supreme Court of Virginia, but the appeal was procedurally dismissed on December 2,

2010, and his petition for rehearing was refused on March 11, 2011. Thereafter, VonEime was granted a delayed appeal and refiled his appeal to the Supreme Court of Virginia. The Court refused the appeal on November 15, 2011, and refused his petition for rehearing on January 20, 2012. VonEime did not petition the Supreme Court for certiorari, nor did he file a state habeas corpus petition.

VonEime filed his § 2254 petition in this court nearly nine years later, on or about December 11, 2020, when it was placed in the mail at Keen Mountain Correctional Center. (Dkt. No. 1.) The petition was later amended. (Dkt. No. 3.) He raises the following issues in the petition:

1. He was incompetent at the time of the crime, which his lawyer did not raise at trial.
2. He was improperly arraigned and convicted of aggravated malicious wounding, although his original arrest warrant was only for malicious wounding.
3. His counsel was ineffective because he used only one "case file" to support VonEime's claim of self-defense.
4. He was never told that the Commonwealth would seek a life sentence and never given 30-days' notice of that intent.
5. His lawyer said the judge would give him a 13-year sentence, which the judge did, but after he got off the bench, he added a life sentence for the aggravated malicious wounding.

### III. ANALYSIS OF STATUTE OF LIMITATIONS

The statute of limitations requires a petitioner to file a § 2254 petition within one year from "the date on which the judgment became final by the conclusion of direct review or the

expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[5] The court must determine the date on which VonEime's judgment became final to determine when the statute of limitations started running and when it ended. The Supreme Court of Virginia refused the petition for rehearing on January 20, 2012. VonEime had 90 days in which to file a petition for certiorari in the United States Supreme Court, or until April 19, 2012. He did not file such a petition, and the judgment became final on April 19, 2012, starting the one-year statute of limitations. The § 2254 petition filed on or about December 11, 2020, was more than eight years later and more than seven years after the expiration of the statute of limitations on April 19, 2013.

Three possible ways exist for a petitioner to avoid the harsh effect of the statute of limitations: Statutory tolling, equitable tolling, or actual innocence. Statutory tolling applies while a properly filed state habeas petition is pending. 28 U.S.C. § 2244(d)(2). VonEime never filed a state habeas petition, so this exception does not apply. VonEime makes no claim of actual, factual innocence, nor has he offered any new evidence to support such a claim. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (holding that the Antiterrorism and Effective Death Penalty Act did not eliminate the exception allowing a petitioner to pursue untimely habeas relief on the merits upon a credible showing of actual innocence); *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (stating that a petitioner making an actual innocence claim must come forward with new evidence and demonstrate that, more likely than not, no reasonable juror would have convicted him in light of the new evidence); *Finch v. McKoy*, 914 F.3d 292, 294 (4th

---

[5] Section 2244(d)(1) provides alternative dates for the start of the one-year period, but none of the other statutory provisions apply, nor have they been raised by VonEime. The full statute was quoted verbatim in the conditional filing order (Dkt. No.2) that directed VonEime to address timeliness.

Cir. 2019) (holding that a federal court may reach a time-barred § 2254 petition if new evidence shows that, more likely than not, no reasonable juror would have convicted the petitioner).

VonEime has asserted that the statute of limitations should be equitably tolled for him, alleging that he lacked the mental capacity to understand the proceedings between 2008 and 2011. The United States Supreme Court has recognized a narrow exception for equitable tolling if the petitioner has pursued his rights diligently and some extraordinary circumstances prevented his timely filing. *Holland v. Florida*, 560 U.S. 631, 636, 649 (2010). When a petitioner asserts mental incapacity as the extraordinary circumstance that prevented timely finding, he must demonstrate "profound mental incapacity," such as institutionalization in a psychiatric facility or a court judgment that one is incompetent to manage his own affairs. *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004). VonEime has not done so. At most, he has shown that he was hospitalized for three weeks in April 2009 to be restored to competence to stand trial. As of April 24, 2009, he was deemed competent to stand trial, to understand the nature of the proceedings, and to communicate with his attorney. Dr. Simpson Psych. Eval. Rpt. at 3–5. The only diagnoses given by Central State Hospital's psychiatrist were alcohol dependence and personality disorder not otherwise specified. Those are not the types of disorders that constitute "profound mental incapacity."

Even if the court accepts that VonEime was mentally incapacitated prior to April 24, 2009, that incapacity had ended when he was restored to competence, before his trial, before his conviction, before his appeals, and long before the expiration of the statute of limitations to file his § 2254 petition. Therefore, such incapacity cannot be the reason for his untimely filing. VonEime has offered nothing in support of his claim of incompetence after that date, nor has he offered any evidence that he diligently pursued his rights, as required under *Holland*.

That he was unaware of the law's timeliness requirement or did not understand how to apply the law to his case is not grounds for tolling, either. *Sosa*, 364 F.3d at 513. Ignorance of the law does not excuse failure to comply with the statute of limitations, even when a litigant represents himself without a lawyer. *Id.* at 512.

For these reasons, equitable tolling does not save VonEime's untimely petition.

## IV. CONCLUSION

For the reasons stated above, the court will grant the respondent's motion to dismiss.

Further, when issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may only issue if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. *Gonzales v. Thaler*, 565 U.S. 134, 140–41 (2012). VonEime has not made such showings in this case.

An appropriate order will be entered.

Entered: January 12, 2022.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge